STATE OF NEW YORK
SUPREME COURT        COUNTY OF SARATOGA

STEPHEN KRAKOWER,

                Plaintiff,                    **SUMMONS**

    -against-

                                              Index No.

CONTINENTAL PLANTS GROUP, LLC,
REID KRAKOWER, and ANDREW LEVINSON,      Date Purchased:

                Defendants.

TO THE ABOVE-NAMED DEFENDANT(S):

    Continental Plants Group, LLC, 445 Park Avenue, 9th Floor, New York, NY 10022

    Reid Krakower, c/o Continental Plants Group LLC, 445 Park Avenue,
        9th Floor, New York, NY 10022

    Andrew Levinson, c/o Continental Plants Group LLC, 445 Park Avenue,
        9th Floor, New York, NY 10022

    YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the date of service (or within 30 days after the service is complete if the summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    The basis of venue is that Plaintiff is a resident of the County of Saratoga, State of New York.

DATED: July 21, 2014
        Albany, New York                      **HINCKLEY, ALLEN & SNYDER LLP**

                                                  By    _/s/ Michael Koenig_

                                                      Michael L. Koenig
                                                      Attorneys for Plaintiff
                                                      30 South Pearl Street, Suite 901
                                                      Albany, New York 12207
                                                      (518) 396-3100

STATE OF NEW YORK
SUPREME COURT        COUNTY OF SARATOGA

STEPHEN KRAKOWER

           Plaintiff,                                    **COMPLAINT**

           -against-                                    Index No. _____

CONTINENTAL PLANTS GROUP LLC,
REID KRAKOWER, and ANDREW LEVINSON

           Defendants.

---

## INTRODUCTION

This employment dispute arises from Defendant Continental Plants Group, LLC ("Continental") and Defendants Reid Krakower ("R. Krakower") and Andrew Levinson's ("Levinson"), (collectively, the "Defendants"), refusal to pay Plaintiff Stephen Krakower ("Krakower") his earned wages. Krakower brings claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for his unpaid wages, as well as common law claims.

## THE PARTIES

1. Krakower is a New York resident with an address of 6 Moss Creek Road, Middle Grove, New York 12850. Krakower earned a B.S. in Business Administration at the Washington University in St. Louis.

2. Continental is a New York domestic limited liability company. Continental has a principal place of business located at 445 Park Avenue (9th Floor), New York, New York 10022 and a Vermont address at 1279 Mountain Road, Stowe, Vermont 05672.

3. Upon information and belief, R. Krakower is a Vermont resident. Continental

52597017 v1

employs R. Krakower as a Principal. R. Krakower is Krakower's brother.

4. Upon information and belief, Levinson is a New Hampshire resident. Continental employs Levinson as a Principal.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Continental under N.Y.C.P.L.R. § 301 and/or § 302(a) because Continental is continuously and systematically transacting business in the State of New York, has a place of business in the State of New York and the causes of action asserted by Krakower arise from Continental's business activities in the State of New York.

6. The Court has personal jurisdiction over R. Krakower pursuant to N.Y.C.P.L.R. § 301 and/or § 302(a) because he is actively transacting business in the State of New York and the causes of action asserted by Krakower arise from R. Krakower's business activities in the State of New York.

7. The Court has personal jurisdiction over Levinson pursuant to N.Y.C.P.L.R. § 301 and/or § 302(a) because he is actively transacting business in the State of New York and the causes of action asserted by Krakower arise from Levinson's business activities in the State of New York.

8. Venue is proper in this county pursuant to N.Y.C.P.L.R. § 503(a) because Krakower resides in this county.

## FACTUAL BACKGROUND

**Continental's Business**

9. According to its website, Continental "provides its clients with the highest quality asset valuation, liquidation and disposition services and innovative capital solutions with unparalleled service, integrity, and results." Specifically, Continental values and assesses

commercial and industrial assets throughout North America for a wide-ranging number of entities. Continental specializes in collateral review and evaluation of manufacturing entities.

10. Various lenders, such as banks and asset-based private lenders, hire Continental as part of their initial, or continued, due diligence on borrowers. Lenders also often hire Continental when a borrower breaks a covenant to research whether the borrower is on schedule for repayment.

11. For due diligence, lenders hire Continental to conduct a quantitative and qualitative assessment of the borrower. As part of its quantitative review, Continental identifies and analyzes working capital assets including accounts receivable, inventory (raw, work-in-process and finished goods), along with inventory management systems and fixed assets including machinery and equipment. Also as part of the quantitative review, Continental analyzes the borrower's costs, sales history, and open order backlog to determine operating margins, and provide an assessment of asset recovery values.

12. A due diligence review also consists of Continental completing a qualitative assessment. A Continental employee physically visits a borrower's location (such as a plant) and tours the facility, meets with management, and otherwise assesses the borrower's overall state.

13. Continental analyzes all its collected data from its quantitative and qualitative assessments into a summary report for the lender. The report evaluates the lender's investment with the borrower, and specifically addresses whether the lender's investment is at risk.

14. Continental also specializes in winding down distressed entities and ensuring they get the best recovery possible for their assets. Continental also assists entities with, among other things, bankruptcy reorganization and financial restructurings.

15. To assist companies in the winding down phase, Continental employee(s) visit the

company's location to get as much information and detail as possible from the company. Continental evaluates the company's assets, costs, and meets with the company's management to develop strategies for assisting with the company's finances. If need be, Continental conducts research to identify a potential buyer of the business or some of its assets.

**Krakower's Job Duties at Continental**

16. By email dated April 29, 2002, Levinson offered Krakower a Vice President position at Continental. The body of the email stated Krakower would be paid $90,000 annually as a base salary and be eligible for certain bonus payments.

17. Krakower accepted Continental's job offer and commenced employment in May 2002.

18. At all relevant times, Continental employed five individuals, including Krakower. R. Krakower and Levinson were Principals, Joel Goldsmith was a Vice President, and Mark Fleckenstein was an Analyst.

19. Due to the small size of the company, each employee performed many different roles and each employee often assisted on each Continental project.

20. Krakower rented office space in Albany, New York to complete his work, but he often traveled to complete his duties as a Vice President.

21. As a Continental Vice President, Krakower assisted with Continental's due diligence projects. Specifically, Krakower often traveled to Continental's clients to conduct the qualitative assessment of a due diligence project. Krakower gathered as much information as possible on the company. Krakower identified all the company's assets and costs. He would often speak with company management to discuss the company's projections and predictions. Krakower also assisted in composing the report following a due diligence project. These

4

projects were time-consuming and often involved workweeks well in excess of forty hours, as well as work days in excess of ten hours.

22. Krakower also assisted Continental's clients in winding down their business or evaluating their assets. Krakower traveled all over the country to Continental's clients to gather as much information as possible, speak with management, and otherwise conduct an assessment of the company's overall state. If need be, Krakower attempted to find a potential buyer for the company. Krakower also evaluated a company's assets and, with the assistance of other Continental employees, identified assets to potentially sell.

23. These projects, just like the due diligence projects, were labor-intensive and involved extensive travel. The projects involved workweeks well in excess of forty hours, as well as work days in excess of ten hours.

24. Continental also tasked Krakower with business development. Krakower identified and located prospective clients by attending various networking events and reviewing public notices of companies in need of financial assistance.

25. After identifying a prospective client, Krakower gathered as much information about the business as needed for review and discussion with R. Krakower and Levinson for preparing and submitting a proposal for services.

26. Krakower's efforts resulted in a substantial amount of business for Continental.

27. As a result of Krakower's wide-ranging job duties at Continental, he often worked more than forty hours in a workweek.

28. Continental did not pay Krakower overtime for any hour he worked in excess of forty during a week.

29. From May 2002 to June 2009, Continental paid Krakower his annual salary of

5

$90,000 and reimbursed Krakower for all reasonable business expenses.

**Continental Suspends Krakower's Pay**

30. In June 2009, Levinson contacted Krakower and stated that effective immediately Continental would temporarily suspend paying Krakower's salary on account of purported financial troubles.

31. Levinson provided no further details, including when Continental would again start paying Krakower his earned wages.

32. Krakower did not press the issue of any repayment plan as he wanted to do whatever he could to assist his brother, and Continental, succeed financially.

33. However, Krakower believed, and Continental's actions and representations suggested, that Continental would pay Krakower his agreed-upon salary for the entire time it suspended Krakower's salary once Continental was financially able to do so.

**Continental Does Not Pay Krakower All His 2009 Earned Wages**

34. Starting in June 2009 and continuing through December 2011, Continental did not pay Krakower all his earned wages. Continental only made sporadic payments, which had no relationship to the actual hours worked, nor did the payments equal his salary of $90,000 per year.

35. Up until June 2009, Continental paid Krakower his agreed-upon pro-rated salary of $37,500. Continental did not pay Krakower any additional amount for the rest of 2009, despite Krakower continuing to work for Continental on a full time basis. Continental did, however, reimburse Krakower for all reasonable business expenses.

36. That is, from June 2009 through December 2009, Krakower continued his full time job of assisting on Continental's due diligence projects, and assisting clients winding down

their business or evaluating these assets, among other job duties. Krakower also continued to develop and generate business for Continental.

37. From June 2009 through December 2009, Krakower worked more than forty-hours a week during various workweeks, as well as work days in excess of ten hours.

38. Continental benefited from Krakower's work on its behalf during 2009.

**Continental Does Not Pay Krakower All His 2010 Earned Wages**

39. Throughout 2010, Continental continued to employ Krakower on a full time basis. Krakower continued his full time job of assisting on Continental's due diligence projects, and assisting clients winding down their business or evaluating these assets, among other job duties. Krakower also continued to develop and generate business for Continental.

40. Continental paid Krakower a total of $17,500 for his work during 2010. Continental paid Krakower $7,500 in February 2010 and $10,000 in August 2010. Continental did not pay Krakower any other amount for his hours worked during 2010, but it did reimburse him for all his reasonable business expenses.

41. During 2010, Krakower worked more than forty-hours a week during various workweeks, as well as work days in excess of ten hours.

42. Continental benefited from Krakower's work on its behalf during 2010.

**Continental Does Not Pay Krakower All His 2011 Earned Wages**

43. Throughout 2011, Continental continued to employ Krakower on a full time basis. Krakower continued his full time job of assisting on Continental's due diligence projects, and assisting clients winding down their business or evaluating these assets, among other job duties. Krakower also continued to develop and generate business for Continental.

44. Continental paid Krakower a total of $30,000 for his work during 2011.

Continental paid Krakower $20,000 in May 2011 and 10,000 in August 2011. Continental did not pay Krakower any other amount for his hours worked during 2011, but it did reimburse him for all his reasonable business expenses.

45. During 2011, Krakower worked more than forty-hours a week during various workweeks, as well as work days in excess of ten hours.

46. Continental benefited from Krakower's work on its behalf during 2011.

**Despite Multiple Requests, Continental Refused to Pay Krakower All His Earned Wages**

47. Between June 2009 and December 2011, Krakower requested multiple times to Continental's Principals, R. Krakower and Levinson, that he be paid all his earned wages. Krakower inquired as to Continental's plan to pay him for all hours worked.

48. Krakower mostly conversed with Levinson about the nonpayment of his earned wages.

49. Levinson told Krakower that Continental would "catch up" on his earned wages. R. Krakower often said that a pending deal or prospective client could be a "game changer" for Continental and thus allow the company to pay Krakower all his owed wages.

50. Due to Krakower's desire to see his brother and Continental succeed, he trusted that Continental would pay him all his earned wages when it was financially able to do so.

51. But despite Krakower's multiple requests, Continental never paid Krakower all his earned wages from June 2009 – through December 2011.

52. In 2011, Krakower worked on a project on Continental's behalf for a New York manufacturer ("New York Project"). The New York Project, like most other Continental projects, was time-consuming and labor intensive. Levinson and R. Krakower told Krakower that after completing the New York Project, Continental would "catch up" on Krakower's owed

wages.

53. After Krakower completed the New York Project, however, Continental did not pay Krakower his owed wages. Instead, Continental paid Krakower $10,000 in August 2011, which amounted to compensating Krakower for only his time spent on site for the New York Project. The $10,000 did not compensate Krakower for the substantial work that he did on the New York Project off site, let alone all his earned wages since June 2009.

54. Nevertheless, Krakower continued to work full time for Continental after August 2011, believing Levinson's and R. Krakower's representations that he would be paid all his owed wages.

55. After August 2011, Continental did not issue Krakower another pay check.

56. By email dated January 9, 2012, Krakower asked R. Krakower when and how Continental would pay Krakower all his owed wages since 2009.

57. R. Krakower did not respond to Krakower's email and again Continental did not pay Krakower all his earned wages.

58. Due to nonpayment of wages, Continental forced Krakower to leave his position as Vice President in January 2012.

### COUNT I (FLSA Minimum Wage and Overtime Violation)
### (Against All Defendants)

59. Krakower repeats and realleges paragraphs 1-58 of this Complaint as if set forth herein.

60. At all relevant times, Krakower was a Continental "employee" within the meaning of 29 U.S.C. §203.

61. At all relevant times, Continental is an enterprise engaged in commerce within the

9

meaning of 29 U.S.C. §§206 and 207.

62. At all relevant times, R. Krakower and Levinson, as Continental's Principals, had the authority to hire and fire Continental employees and set an employee's terms and conditions of employment, including an employee's compensation.

63. Further, R. Krakower and Levinson played integral roles in the day to day operation of Continental. They both had decisional and operational authority over the business. As Principals, R. Krakower and Levinson oversaw all aspects of Continental's business.

64. As such, R. Krakower and Levinson are "employer[s]" within the meaning of 29 U.S.C. §203.

65. Beginning in June 2009 and continuing through December 2011, Defendants willfully failed to compensate Krakower the minimum wage for the hours he worked, in violation of the FLSA.

66. Beginning in June 2009 and continuing through December 2011, Defendants willfully failed to compensate Krakower at a rate of one-and-a-half times his regular rate of pay for each hour he worked in excess of forty hours in a workweek, in violation of the FLSA.

67. Defendants' FLSA violations were willful and intentional.

68. Krakower is entitled to recover from Defendants, jointly and severally, amounts to be proven at trial for his unpaid minimum wages, overtime wages, an additional amount equal as liquidated damages, reasonable attorney's fees, and the costs of this action. 29 U.S.C. §216(b).

## COUNT II (NYLL Unpaid Wage Violation)
### (Against All Defendants)

69. Krakower repeats and realleges paragraphs 1-68 of this Complaint as if set forth

52597017 v1

herein.

70. At all relevant times, Krakower was Continental's "employee" within the meaning of NYLL §§ 2, 190.

71. At all relevant times, Continental was an "employer" within the meaning of NYLL §§ 2, 190.

72. At all relevant times, R. Krakower and Levinson were "employer[s]" within the meaning of NYLL §§ 2, 190.

73. Beginning in June 2009 and continuing through December 2011, Defendants willfully required, suffered, or permitted Krakower to work but did not pay him his wages earned in accordance with the agreed terms of employment, in violation of NYLL § 191.

74. Krakower is entitled to recover from Defendants, jointly and severally, amounts to be proven at trial for his wages earned in accordance with the agreed terms of employment, liquidated damages equal to one-hundred percent of the total wages found to be due, reasonable attorney's fees, and the costs of this action. NYLL § 198.

### COUNT III (NYLL Minimum Wage and Overtime Violation)
### (Against All Defendants)

75. Krakower repeats and realleges paragraphs 1-74 of this Complaint as if set forth herein.

76. At all relevant times, Krakower was Continental's "employee" within the meaning of NYLL §§ 2, 651.

77. At all relevant times, Continental is an "employer" within the meaning of NYLL §§ 2, and 651.

78. At all relevant times, R. Krakower and Levinson were "employer[s]" within the

11

meaning of NYLL §§ 2, and 651.

79. Beginning in June 2009 and continuing through December 2011, Defendants willfully required, suffered, or permitted Krakower to work for less than the minimum wage in violation of NYLL § 652 and 12 NYCRR § 146-1.2.

80. Beginning in June 2009 and continuing through December 2011, Defendants willfully failed to compensate Krakower at a rate of one-and-a-half times his regular rate of pay for each hour he worked in excess of forty hours in a workweek in violation of NYLL § 652 and 12 NYCRR § 142-2.2.

81. Krakower is entitled to recover from Defendants, jointly and severally, amounts to be proven at trial for his unpaid minimum wages, overtime wages, liquidated damages equal to one-hundred percent of the total wages found to be due, reasonable attorney's fees, and the costs of this action. NYLL § 663.

### COUNT IV (NYLL Spread of Hour Violation)
### (Against Both Defendants)

82. Krakower repeats and realleges paragraphs 1-81 of this Complaint as if set forth herein.

83. Beginning in June 2009 and continuing through December 2011, Krakower worked more than ten hours a day during various workweeks. With the exception of a few weeks during this time frame, Krakower did not receive a minimum wage.

84. Beginning in June 2009 and continuing through December 2011, the interval between the beginning and end of Krakower's work day ("spread of hours"), including time off for meals and other off-duty intervals, exceeded ten hours on various occasions. With the exception of a few weeks during this time frame, Krakower did not receive a minimum wage.

85. Beginning in June 2009 and continuing through December 2011, Defendants did not pay Krakower an extra hour of pay for the days he worked, or when the "spread of hours" was more than ten hours ("spread-of-hour pay"), in violation of 12 NYCRR § 142-2.4.

86. Krakower is entitled to his earned "spread-of-hour-pay" in addition to the minimum wage and overtime pay he earned from June 2009 through December 2011.

87. Krakower is entitled to recover from Defendants, jointly and severally, amounts to be proven at trial for his "spread-of-hour pay," liquidated damages equal to one-hundred percent of the total wages found to be due, reasonable attorney's fees, and the costs of this action. NYLL § 663.

### COUNT V (NYLL Statement of Wages Violation)
### (Against All Defendants)

88. Krakower repeats and realleges paragraphs 1-87 of this Complaint as if set forth herein.

89. Beginning in June 2009 and continuing through December 2011, Defendants did not provide Krakower statements on at least a semi-monthly basis containing his payment of wages, listing of gross wages, deductions, and net wages, in violation of NYLL § 195(3).

90. Krakower is entitled to $100 for each statement (with a maximum recovery of $2500) he did not receive.

91. Krakower is entitled to recover from Defendants, jointly and severally, an amount not exceeding $2500, reasonable attorney's fees, and the costs of this action for Defendants' NYLL 198(1-d) violation.

### COUNT VI (Breach of Contract)
### (Against Continental)

92. Krakower repeats and realleges paragraphs 1-91 of this Complaint as if set forth

herein.

93. Continental and Krakower entered into a contract whereas Continental would pay Krakower an annual salary of $90,000 for all hours he worked on Continental's behalf.

94. Krakower performed his obligations under the Contract.

95. Starting in June 2009, Continental failed to perform its obligations under the Contract.

96. As a result of Continental's breaches of the contract, Krakower sustained substantial damages to be proven at trial.

## COUNT VII (Unjust Enrichment)
## (Against Continental)

97. Krakower repeats and realleges paragraphs 1-96 of this Complaint as if set forth herein.

98. Starting in June 2009 and through December 2011, Continental received the benefits of Krakower's services without fully compensating him.

99. As a result, Continental has been unjustly enriched and it would be inequitable to allow Continental to receive the benefits of Krakower's labor without compensating Krakower.

100. Krakower is entitled to the value of all that time and effort wrongfully conferred to Continental in an amount to be proven at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Krakower requests that the Court:

A. Enter judgment in Krakower's favor on all Counts of this Complaint and award Krakower damages for the injuries he has suffered;

B. Award Krakower unpaid minimum wages and an additional equal amount as

liquidated damages, pursuant to 29 U.S.C. § 216(b);

    C.    Award Krakower unpaid minimum wages and an additional equal amount as liquidated damages, pursuant to NYLL § 663(1);

    D.    Award Krakower unpaid overtime wages and an additional equal amount as liquidated damages, pursuant to 29 U.S.C. §216(b);

    E.    Award Krakower unpaid overtime wages and an additional equal amount as liquidated damages, pursuant to NYLL §663(1);

    F.    Award Krakower his wages earned in accordance with the agreed terms of employment and an additional equal amount as liquidated damages, pursuant to NYLL §198;

    G.    Award Plaintiff prejudgment and postjudgment interest, pursuant to New York CPLR 5001 and 5004, and NYLL §198;

    H.    Award Plaintiff the costs of this action together with reasonable attorney's fees pursuant to NYLL §§ 198 and 663(1), and 29 U.S.C. §216(b); and

    I.    Such other relief as the Court may deem just and appropriate.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE**

STEPHEN KRAKOWER

By its attorneys,

_____
Michael L. Koenig, Esq.
Christina L. Lewis, Esq. (*pro hac vice application to be filed*)
Brendan J. Lowd, Esq. (*pro hac vice application to be filed*)
HINCKLEY, ALLEN & SNYDER LLP
30 S. Pearl Street, Suite 901
Albany, New York 12207
(518) 396-3100

DATED: July ___, 2014

52597017 v1